UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

TRUSTEES OF THE SHEET METAL
WORKERS INTERNATIONAL ASSOCIATION
LOCAL UNION NO. 28 BENEFIT FUNDS,

                              Plaintiff,              13-CV-05604 (RMB)(SN)

            -against-                          **REPORT AND
                                                                 RECOMMENDATION**

RAYMOND MARTIN,
d/b/a RHB INSTALLATIONS,

                              Defendant.

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE RICHARD M. BERMAN:**

      On March 19, 2014, the Honorable Richard M. Berman entered default against the defendant Raymond Martin, d/b/a RHB Installations, and referred this case to my docket to conduct an inquest and to report and recommend concerning the plaintiff's damages. The plaintiff seeks a total award of $104,527.16. The Court finds that the plaintiff has provided a sufficient basis on which to award damages, but that the plaintiff cannot recover for the period for which it now seeks damages but that was not identified in the complaint. The Court therefore recommends a total award of $89,284.07.

**BACKGROUND**

      On August 9, 2013, the plaintiff, Trustees of the Sheet Metal Workers International Association Local Union No. 28 Benefit Funds (the "plaintiff" or "Funds"), brought this action against the defendant, Raymond Martin d/b/a RHB Installations (the "defendant" or

"employer"), under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(a)(3), 1145, and Section 301 of the Labor Management Relations Act of 1947 ("LMRA" or the "Taft-Hartley Act"), 29 U.S.C. § 185, to recover delinquent employer contributions to a group of employee benefit plans as required under the parties' Collective Bargaining Agreement. The plaintiff seeks to recover employer contributions that were not remitted to the employee benefit plans for a one-year period, interest on the unpaid principal sum of contributions, and attorneys' fees and court costs.

On September 19, 2013, after the defendant failed to respond to the complaint, Judge Berman issued an order to show cause why default judgment should not be entered against the defendant, and the plaintiff filed a motion for default judgment on September 25. On October 1, attorney David Baram appeared on behalf of the defendant and filed a motion to adjourn the order to show cause hearing until October 31, by which point Baram said the defendant will have filed his answer. Judge Berman granted the motion and subsequently granted a motion filed by the plaintiff to extend the order to show cause hearing to November 20 to allow the defendant to respond to the complaint. The defendant filed an answer to the complaint on November 22, 2013.

On March 5, 2014, after the defendant failed to appear for a February 26, 2014 status conference before Judge Berman, a certificate of default was issued against the defendant, and the plaintiff filed its second motion for default judgment. On March 19, 2014, Judge Berman issued an order for default judgment against the defendant and referred the matter to me to report and recommend on damages.

On April 14, 2014, the plaintiff submitted its Proposed Findings of Fact and Conclusions of Law ("Statement of Damages"), along with the Affidavit of Glen Camisa (the "Camisa

Affidavit") and the Affidavit of Dana L. Henke (the "Henke Affidavit"), each attaching various exhibits. The defendant did not respond.

## DISCUSSION

**I.  Legal Standard**

The Court of Appeals set forth the procedural rules applicable to the entry of a default judgment in City of New York v. Mickalis Pawn Shop, LLC:

> "Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation." Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004). Rule 55 provides a "two-step process" for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment. New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff. . . . The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c).

645 F.3d 114, 128 (2d Cir. 2011).

Where default has been entered against the defendant, courts are to accept as true all of the well-pleaded facts alleged in the complaint, except those concerning the amount of damages. See Au Bon Pain Corp. v. Artect Inc., 653 F.2d 61, 65 (2d Cir. 1981); Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); All-Star Mktg. Grp., LLC v. Media Brands Co., Ltd., 775 F. Supp. 2d 613, 618 (S.D.N.Y. 2011). "[E]ven after [a] default, . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." In re Industrial Diamonds Antitrust Litig., 119 F. Supp. 2d 418, 420 (S.D.N.Y 2000). Where the plaintiff's well-pleaded facts are sufficient to state a claim on which

relief can be granted, the only remaining issue in an inquest is whether the plaintiff has provided adequate support for its requested relief. See Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).

"[A] plaintiff seeking to recover damages against a defaulting defendant must prove its claim though the submission of evidence. . . ." Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d. 501, 503 (S.D.N.Y. 2009). A court may determine the amount, if any, a plaintiff is entitled to recover without holding a hearing as long as (1) the court determines the proper rule for calculating damages, and (2) the evidence submitted by the plaintiff establishes "with reasonable certainty" the basis for the damages. Id. (citing Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155, and Transatlantic Marine Claims Agency Inc., 109 F.3d at 111); Tyrrell-Miller, 678 F. Supp. 2d at 121 (citing Langenberg v. Sofair, 03 Civ. 8339 (KMK)(FM), 2006 WL 3518197, at *1 (S.D.N.Y. Dec. 7, 2006)).

## II.    Liability

### A.    ERISA

ERISA requires employers who enter into a collective bargaining agreement to make contributions "in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. When judgment is awarded in favor of an employee benefit plan in an ERISA action brought by a fiduciary to recover unpaid contributions, courts are required to award the plan:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of-

        (i)      interest on the unpaid contributions, or

        (ii)     liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); see Trustees of the Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund & 401(k) Sav. Plan v. Philip Gen. Const., 05 Civ. 1665 (NG)(RLM), 2007 WL 3124612, at *9-10 (E.D.N.Y. Oct. 23, 2007), adopting report and recommendation.

**B.    Analysis**

The plaintiff Funds are jointly administered multi-employer, labor-management trust funds as defined under Sections 3(21)(A) and 502(a)(3) of ERISA. The Funds are established and maintained by the Sheet Metal Workers International Association Local Union No. 28 (the "Union") and various employers under the terms of the Trade Agreements and Trust Indentures in compliance with Section 302(c)(5)(1) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). The Funds are employee benefit plans within the meaning of Sections 3(1-3) and 502(d)(1) of ERISA, and multi-employer plans within the meaning of Sections 3(37) and 515 of ERISA. The defendant is an employer within the meaning of Sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5), 1145, and does business as an employer in an industry affecting commerce within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185.

As a member of an Employers Association, the defendant employer was party to the Collective Bargaining Agreement (the "CBA" (Henke Aff., Ex. A)) between the Union and the

Employers Association that was effective from August 1, 2009, through July 21, 2011. Under the CBA, the defendant was bound "to submit contribution reports setting forth the hours that each of its employees worked and the amount of contributions due pursuant to the rate schedules set forth in the [CBA] for all work performed by its employees covered by the [CBA] and to remit such monetary contributions in accordance with the [CBA]." (Compl. ¶ 13.) The defendant failed to provide the reports until after this litigation commenced or to pay the benefit contributions agreed to under the CBA from August 26, 2009, through August 25, 2010. (See Henke Aff. ¶ 15, Ex. C; Camisa Aff. ¶¶ 6-7).

The complaint further alleges that the plaintiff Trustees are fiduciaries who are authorized to bring this action and collect contributions on behalf of the employees under 29 U.S.C. § 1132(d)(1). As all the elements required under the relevant ERISA provisions have been alleged, the plaintiff has pled sufficient facts to establish the defendant's liability for unpaid benefit contributions.

### III.   Damages

The plaintiffs seek to recover $87,125.59 in unpaid contributions, $14,171.57 in interest, $2,750 in attorneys' fees, and $480 in court costs, for a total award of $104,527.16.

#### A.   Unpaid Contributions

The plaintiff seeks unpaid contributions from August 26, 2009, through August 25, 2010, though the complaint alleged unpaid contributions only through April 21, 2010. According to plaintiff's counsel, "during the course of the instant action the Funds became aware of additional estimated contributions due and owing to the Funds for the period April 22, 2010 through August 25, 2010. These estimates were based upon prior reports submitted to the Funds." (Henke Aff. ¶ 15.) Federal Rule of Civil Procedure 54(c) requires that a "default judgment must not differ in

kind from, or exceed in amount, what is demanded in the pleadings." See <u>Silge v. Merz</u>, 510 F.3d 157, 161 (2d Cir. 2007). In its complaint, the plaintiff stated that it may seek "additional contributions . . . [that] may become due and owing . . . [d]uring the course of the instant action." (Compl. ¶ 30.) Courts have found that this language in a complaint puts the defendant on notice about the possibility of such damages and thus permits the plaintiff to seek unpaid contributions that accrued after the action was filed. See <u>Trustees of Local 522 Pension Fund v. Tri-Star Lumber Corp.</u>, 11 Civ. 6087 (ENV)(JO), 2013 WL 1386207, at *3 (E.D.N.Y. Feb. 8, 2013), <u>report and recommendation adopted</u>, 2013 WL 1386340 (E.D.N.Y. Apr. 4, 2013); <u>Finkel v. Universal Sec. Sys., Inc.</u>, 10 Civ. 4520 (NGG)(LB), 2011 WL 5402070, at *6 (E.D.N.Y. Sept. 9, 2011), <u>report and recommendation adopted</u>, 2011 WL 5403080 (E.D.N.Y. Nov. 4, 2011). Here, however, the defendant was not on notice about the possibility of additional damages that accrued before the litigation, but that the plaintiff claims to have learned about during the course of litigation. The plaintiff offers no explanation for why it did not include damages for this four-month period in its complaint or why it discovered this period of allegedly unpaid contributions only after filing the lawsuit in August 2013. The Court therefore finds that, under Rule 54(c), the plaintiff is entitled to damages that accrued from August 26, 2009 until April 21, 2010 only.

     The plaintiff sought $78,160.72 in its complaint for unpaid contributions during this period. In support of its requested damages, the plaintiff submits an affidavit from Glen Camisa, the Fund Administrator retained by the Union. As a basis for the requested amount, Camisa submits the relevant portions of the CBA; the employer's weekly contribution reports that were provided to the plaintiff after this lawsuit was filed; the Unions pay rate sheets; and the Funds' business records accounting for any contribution amounts that were paid by the employer during this period. Camisa explains in his affidavit how he used these documents to calculate the

amount of unpaid contributions, which the Court finds to be a reasonable method of measurement of the amount of damages and sufficient to calculate the amount with reasonable certainty. (See Camisa Aff. ¶¶ 6-7.) Camisa also explains how the plaintiff estimated the contribution amount due beginning the week of April 7, 2010, after which no contribution reports were provided. The Court finds that Camisa's affidavit and the supporting documentation constitute an adequate basis for awarding $78,160.72 in unpaid contributions for the period of August 26, 2009 through April 21, 2010.

### B. Interest

The plaintiff seeks interest in the amount of $14,171.57 on the unpaid principal sum of contributions from the date the benefit contributions were due through September 30, 2010. Section 502 of ERISA provides that interest on unpaid contributions is calculated "using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). Here, the CBA provides that "all delinquent contributions shall bear interest of two percent (2%) per month[.]" (Ex. A at 7.) The plaintiff calculated the interest through September 2010 for each weekly unpaid contribution amount and submitted a spreadsheet breaking down these figures. (See Ex. D.) Camisa provides the basis for the interest calculation in his affidavit, which the Court finds to be a correct calculation. (Camisa Aff. ¶ 8.) The Court calculates the requested interest for the excluded period after April 21, 2010 to be $980.44 and thus deducts that amount from the total amount requested. The Court therefore finds that the plaintiff is entitled to interest in the amount of $13,893.35.[1]

---

[1] The Court calculated the interest for the excluded period using what appears to be the plaintiff's methodology. To the extent that the plaintiff disagrees with the Court's calculation or application of the plaintiff's formula, the plaintiff should provide Judge Berman with its proposed figure for the interest that accrued during the excluded period, which should then be subtracted from $14,171.57.

C.     Attorneys' Fees

The plaintiff seeks attorneys' fees, which are mandatory under Section 502 of ERISA. See 29 U.S.C. § 1132(g)(2) ("[T]he court shall award . . . reasonable attorney's fees"); Labarbera v. Clestra Hauserman, Inc., 369 F.3d 224, 226 (2d Cir. 2004). District courts should determine the "presumptively reasonable fee" for an attorney's services by looking to "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 184 (2d Cir. 2008); see Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)) ("In determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'").[2] The Court of Appeals calculates a "presumptively reasonable fee" as the product of a reasonable hourly rate and a reasonable number of hours engaged in litigating the matter. See Arbor Hill, 522 F.3d at 183-84. Requested fees must be supported "with contemporaneous time records establishing 'for each attorney [for whom fees are sought], the date [on which work was performed], the hours expended, and the nature of the work done.'" Annuity, Welfare & Apprenticeship Skill Imp. & Safety Funds of Int'l Union of Operating Engineers, Local 15, 15A, 15C, 15D, AFL-CIO v. Integrated Structures Corp., 12 Civ. 436 (LGS)(KNF), 2013 WL 2649644, at *7 (S.D.N.Y. June 13, 2013) (quoting New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136,

---

[2] The Court of Appeals in Arbor Hill called for abandoning the "lodestar" language from Hensley v. Eckerhart, 461 U.S. 424 (1983), in favor of the term "presumptively reasonable fee," which would shift the emphasis from a mechanical analysis of reasonable hourly rates to a more holistic and discretionary assessment that would allow a court's calculation of a reasonable total fees to factor into the determination of reasonable hourly rates. See Arbor Hill, 522 F.3d at 190. The Supreme Court, however, issued a 2010 opinion endorsing the lodestar method and language. See Perdue v. Kenny A., 559 U.S. 542, 561 (2010) (deciding the issue in the context of 42 U.S.C. § 1988's fee-shifting provision). "In the wake of Kenny A., the Second Circuit has used the terms 'lodestar' and 'presumptively reasonable fee' interchangeably." Telebrands Corp. v. HM Imp. USA Corp., 09 Civ. 3492 (ENV)(RLM), 2012 WL 3930405, at *11 n.17 (E.D.N.Y. July 26, 2012), report and recommendation adopted, 2012 WL 3957188 (E.D.N.Y. Sept. 10, 2012) (citing Millea v. Metro–North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

1154 (2d Cir. 1983)). In determining the reasonable fee for a particular case, courts rely on reasonable hourly rates prevailing in the district for similar services provided by attorneys with comparable skill and experience. See id. (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)); Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Servs., Inc., 13 Civ. 2548 (KMW)(JLC), 2014 WL 1303434, at *7 (S.D.N.Y. Apr. 1, 2014); R & L Livery, Inc., 2010 WL 3613967, at *3. "It is the fee movant's burden to establish the prevailing market rate." Sub-Zero, Inc., 2014 WL 1303434, at *7.

The plaintiff seeks attorneys' fees in the amount of $2,750 for the services provided by lead counsel Dana L. Henke and her paralegal. Henke was admitted to this District in 1990 and affirms that she has been litigating cases to recover unpaid employee benefits for over 20 years. (Henke Aff. ¶ 18.) She submits time records showing that she provided 10 hours of services in this matter at a rate of $250 per hour, and that her paralegal provided 2.5 hours of services at a rate of $100. The fee rates proposed are in line or lower than rates generally charged for similar work by attorneys of comparable experience and paralegals in this District. See Trustees of New York Oil Heating Ins. Fund v. Anchor Tank Lines Corp., 09 Civ. 9997 (DLC)(AJP), 2011 WL 767162, at *4 (S.D.N.Y. Mar. 4, 2011) (collecting cases finding that rates of $300 per hour for associate attorneys and $150 per hours for paralegals were reasonable in ERISA cases); see also Anthony v. Franklin First Fin., Ltd., 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012). The Court has reviewed the submitted time records and finds that all the described tasks were necessary to prosecute this action and were performed within a reasonable amount of time. The Court therefore recommends awarding the plaintiff $2,750 in attorneys' fees.

The plaintiff also seeks $480 in court costs for filing and process server fees, which is less than that awarded in other similar cases upon a default judgment. See id. at *5 (awarding

$504 in court costs for filing and process server fees); Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Loc. Union No. 12A v. Trade Winds Envtl., 09 Civ. 1771 (RJH)(JLC), 2010 WL 8020302, at *6 (S.D.N.Y. Dec. 23, 2010) (awarding $701.75 in court costs for filing and process server fees). The Court therefore finds that the plaintiff is entitled to $480 in court costs.

## CONCLUSION

For the foregoing reasons, the plaintiff should be awarded (1) $78,160.72 in unpaid contributions; (2) $13,893.35 in interest; (3) $2,750 in attorneys' fees; and (4) $480 in costs, for a total award of $89,284.07.

\*   \*   \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Berman. The failure to file these timely objections will result in a waiver

of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:  New York, New York
        July 8, 2014